UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

NORTHEAST RESEARCH, LLC,

                              Plaintiff,

      v.                                                    DECISION AND ORDER
                                                               04-CV-645A

ONE SHIPWRECKED VESSEL, her Tackle,
Equipment, Appurtenances and Cargo, located
within two nautical miles of a circle with the center
point at the coordinates 42 degrees 33 minutes
North Latitude, and 79 degrees 36 minutes West
Longitude,

                              *in rem*
                              Defendant,

STATE OF NEW YORK,

                              Claimant.

---

## INTRODUCTION

Plaintiff NorthEast Research, LLC, commenced this admiralty *in rem* action by filing a complaint against One Shipwrecked Vessel located in 170 feet of freshwater in the New York waters of Lake Erie asserting title to the vessel under maritime law.[1] The State of New York intervened and filed an answer asserting

---

[1] Plaintiff also moved for (1) issuance of a warrant of arrest, pursuant to Federal Rules of Civil Procedure Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") Rule C(3)(a)(ii), granting only plaintiff the right to document, recover and preserve the vessel, (2) an order *in rem* appointing plaintiff as custodian of the vessel, and (3) appointment as special process server. On August 9, 2004, this Court granted

title to the vessel under the Abandoned Shipwreck Act of 1987, 43 U.S.C. §§ 2101 et seq. ("ASA"), the Submerged Lands Act ("SLA), 43 U.S.C. § 1302 and various provisions of New York State Law.

The State filed a motion for summary judgment asserting ownership under the ASA. Plaintiff cross-moved for partial summary judgment seeking a salvage award under maritime law, and asserting that the State has failed to prove its claim under the ASA.

On May 27, 2010, Magistrate Judge Leslie G. Foschio, to whom this matter was referred, issued a Report and Recommendation recommending that the State's motion for summary judgment be granted, that the plaintiff's motion be denied, and that title be awarded to the State under the ASA. Alternatively, the Magistrate Judge found that title should be awarded to the State under New York's Education Law and New York Public Lands Law, but that plaintiff was not entitled to any salvage award.

Plaintiff filed objections to the Report and Recommendation, and the State filed a response. On September 9, 2010, this Court held oral argument. For the reasons stated, the Court grants summary judgment in favor of the State under the ASA, and denies plaintiff's motion for a salvage award.

---

all three motions, issuing a warrant of arrest for the vessel, appointing plaintiff as custodian, and ordering Plaintiff to post process upon the vessel.

## **BACKGROUND**[2]

Plaintiff is a Massachusetts limited liability company with its principal place of business in Dunkirk, New York, and is engaged in the business of locating and salvaging submerged shipwrecks. Plaintiff asserts title to the vessel, its tackle, equipment, appurtenances and cargo, under maritime law. The vessel is a Great Lakes schooner (sometimes referred to herein as the "Dunkirk Schooner"), a two-masted wooden sailing ship, approximately 80 feet in length on deck and 19 feet in beam, and is embedded in submerged lands of New York in the eastern basin of Lake Erie, near Dunkirk, New York. According to plaintiff, the vessel is a schooner built between 1790 and 1810, and lost sometime after 1835 and before 1850. The Dunkirk Schooner rests 170 feet deep in the freshwater of Lake Erie. Because of the depth of water, "technical diving" is required to dive the wreck.[3]

Plaintiff contends that the Dunkirk Schooner is actually the *CALEDONIA*, built in 1799 by British North West Trading Company, and used in the fur trade making voyages between Fort Erie, Canada and Mackinac, Michigan. At the outbreak of the War of 1812, the Upper Great Lakes were under British control and the *CALEDONIA* was conscripted for British military service, converted from

---

[2] This order will only briefly summarize the facts relevant to resolution of the pending motions. Familiarity with Magistrate Judge Foschio's detailed recitation of the facts in his Report and Recommendation is assumed.

[3] Plaintiff defines "technical" diving as diving that is "beyond the range of ordinary sport divers in depths and conditions requiring the use redundant tanks, non-air mixtures of enriched oxygen "nitrox" for optimal decompression, [and] drysuits for thermal protection . . . ." *See* Pl. Statement of Undisputed Facts, Dkt. No. 48, at ¶ 7.

a schooner to a brig-of-war, with two square-rigged masts and outfitted with guns, and used to transport British troops. In 1813, an American boarding party captured the vessel for the United States, conscripting the vessel into the United States Army. After the War of 1812, the *CALEDONIA* was sold to Pennsylvania merchants Rufus Reed ("Reed") and John Dickson ("Dickson"), who refitted the vessel as a commercial schooner, renamed it the *GENERAL WAYNE*, and used the vessel to ferry runaway slaves across Lake Erie to freedom in Canada as part of the Underground Railroad. The last documented evidence of the *GENERAL WAYNE* clearing any Great Lakes port is 1818.

Plaintiff obtained an Assignment of Ownership Interest & Claim of Title from Hannah Reed Mays ("Mays"), a descendant of Rufus Reed ("Mays Assignment"), wherein Mays attempts to convey all of her right, title and interest, if any, in the Dunkirk Schooner to plaintiff. Although other descendants have been found, no others have assigned their potential ownership interest in the *CALEDONIA/GENERAL WAYNE* to plaintiff. Specifically, the State has provided the Court with an affidavit from Nancy Potter, a descendant of Dickson, wherein she affirms that she and her mother and brother have been contacted by plaintiff requesting that they assign their ownership interest in the vessel to plaintiff, but they have refused to do so. *See* Potter Affidavit, Dkt. 60.

The State disputes plaintiff's assertions with regard to the identity of the Dunkirk Schooner. According to the State's retained expert, Arthur Cohn, the

vessel is not the *CALEDONIA/GENERAL WAYNE*, but instead a "nameless 1830s schooner that sank carrying grain." See Cohn Report, Dkt. 47, Exh. B, at ¶ 56. Cohn believes that the amount of cargo recovered from the cargo hold suggests the vessel sank with a full load of grain and hickory nuts while traveling east on Lake Erie, in the fall, when grains in the Midwest are harvested and hickory nuts are plentiful.

The Magistrate Judge determined that it was unnecessary to ascertain the identity of the Dunkirk Schooner because, even if the Dunkirk Schooner was the *CALEDONIA/GENERAL WAYNE* as plaintiff contends, the State demonstrated title to the vessel under the Abandoned Shipwreck Act of 1987.

## DISCUSSION

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts Magistrate Judge Foschio's recommendation to grant summary judgment in favor of the State under the Abandoned Shipwrecks Act of 1987, 43 U.S.C. § § 2101 et seq. ("ASA").

Under the ASA, the United States asserts title to any abandoned shipwreck that is:

    (1) embedded in submerged lands of a State;

    (2) embedded in coralline formations protected by a State on submerged

>lands of a State; or
>
>(3) on submerged lands of a State and is included in or determined eligible for inclusion in the National Register.

43 U.S.C. § 2105(a). Title is then automatically transferred to the State in which the abandoned ship is located. *See* 43 U.S.C. § 2105(c). Therefore, a state acquires title to a shipwreck under the ASA, when the wreck is: (1) abandoned and (2) falls under one of the three enumerated categories. *See Sea Hunt Inc. v. The Unidentified Shipwrecked Vessel or Vessels*, 221 F.3d 634, 640 (4th Cir. 2000), *cert. denied*, 531 U.S. 1144 (2001). If title to the Dunkirk Schooner meets the criteria under the ASA, title vests in the State and no salvage is awarded. *See Fairport Int'l Exploration v. The Shipwrecked Vessel know as the CAPTAIN LAWRENCE*, 177 F.3d 491, 498 (6th Cir. 1999)(explaining that post-enactment of the ASA, "[i]f a diver now discovers a long-lost ship embedded in the submerged lands of a State, a finding of abandonment leaves the diver with neither title nor a salvage award . . . .").

The Magistrate Judge found that it was undisputed that the Dunkirk Schooner is embedded in the submerged lands of New York. *See* Report and Recommendation, Dkt. No. 62, at 24. Neither party objects to that finding. Therefore, the second element of the State's ASA claim is satisfied. As the first element–abandonment–the parties dispute whether the State has met its burden on that issue.

The ASA does not define the term "abandoned." In *California v. Deep Sea Research, Inc.*, 523 U.S. 491 (1998), the Supreme Court clarified that "the meaning of 'abandoned' under the ASA conforms with its meaning under admiralty law" *id.* at 508, but provided no other guidance in determining whether the abandonment requirement

6

has been met. As the Magistrate Judge correctly noted, there is a split of circuit authority as to whether abandonment must be proven by an express relinquishment of title, or whether abandonment can be inferred from the surrounding circumstances. For example, in *Columbus-America Discovery Group v. Atlantic Mut. Ins.*, 974 F.2d 450 (4th Cir. 1992), the Fourth Circuit adopted the position that an intent to abandon must demonstrate by a "clear and unmistakable affirmative act" (*i.e.*, express abandonment):

> While abandonment has been simply described as "the act of deserting property without hope of recovery or intention of returning to it," *Nunley v. M/V DAUNTLESS COLOCOTRONIS*, 863 F.2d 1190, 1198 (5th Cir. 1989), in the lost property at sea context, there is also a strong actus element required to prove the necessary intent. *Zych v. The Unidentified, Wrecked and Abandoned Vessel*, 755 F. Supp. 213, 214 (N.D.Ill.1990); *THE NO. 105*, 97 F.2d 425, 426 (5th Cir.1938). "Abandonment is said to be a voluntary act which must be proved by a clear and unmistakable affirmative act to indicate a purpose to repudiate ownership." *THE PORT HUNTER*, 6 F. Supp. 1009, 1011 (D.Mass. 1934). The proof that need be shown must be "strong ..., such as the owner's express declaration abandoning title." T. Schoenbaum, *Admiralty and Maritime Law,* § 15-7, at 512 (1987) . . . .

*Id.* at 461. Other circuits have held that abandonment may be found by circumstantial evidence. In *Deep Sea Research, Inc., v. BROTHER JONATHAN*, 89 F.3d 680 (9th Cir. 1996), *vacated by* 523 U.S. 491 (1998), the Ninth Circuit adopted the following test for abandonment:

> Traditionally, maritime law has found abandonment when title to a vessel has been affirmatively renounced, or when circumstances give rise to an inference that the vessel has been abandoned; courts have found abandonment, for instance, when a vessel is "so long lost that time can be presumed to have eroded any realistic claim of original title."
>
> . . . .

7

> . . . [The district court's] holding that the *Brother Jonathan* is not abandoned rests on the traditional rule that a wreck is not abandoned unless either 1) title is affirmatively renounced or 2) abandonment can be inferred from the lapse of time or failure to pursue salvage efforts on the part of the owners.

*Brother Jonathan*, 89 F.3d at 688 (emphasis added) (citation omitted). The Sixth Circuit has also adopted the view that an intent to abandon may be inferred by circumstances. *See Fairport Int'l Exploration, Inc. v. Shripwrecked Vessel know as the CAPTAIN LAWRENCE*, 105 F.3d 1078, 1085 (6th Cir. 1997), *vacated by* 523 U.S. 1091 (1998) ("[T]here is ample authority that abandonment may, for some purposes at least, be inferred from the surrounding circumstances."). In declining to follow the Fourth Circuit's express abandonment requirement, the Sixth Circuit stated: "Common sense makes readily apparent that the [ASA] did not contemplate a court's requiring express abandonment; such explicit action is obviously rare indeed, and application of such a rule would render the ASA a virtual nullity." *Id.*

Like the Magistrate Judge, this Court finds that abandonment may be inferred from the surrounding circumstances. *See* Report and Recommendation, Dkt. No. 62, at 27. However, because there is a presumption against finding abandonment, *Hener v. United States*, 525 F.Supp. 350, 356-357 (S.D.N.Y. 1981), the State must prove abandonment by clear and convincing evidence. *See Trueman v. The Historic Steamtug NEW YORK,* 120 F. Supp. 2d 228, 233 (N.D.N.Y. 2000). In determining whether circumstantial evidence supports an inference of abandonment by clear and convincing evidence, courts consider factors such as lapse of time, the owner's nonuse, the place of the shipwreck, and the actions and conduct of the parties having ownership

8

rights in the vessel. *Id; see also Moyer v. Wrecked and Abandoned Vessel, known as ANDREA DORIA,* 836 F. Supp. 1099, 1105 (D.N.J. 1993)*.*

The Magistrate Judge found that the State had proven abandonment by clear and convincing evidence. The Magistrate Judge cited undisputed evidence showing that the Dunkirk Schooner was likely shipwrecked before 1850 and, despite the passage of over 150 years, no efforts were made to locate and salvage the vessel. The State presented the expert opinion of Arthur Cohn, Executive Director and co-founder of the Lake Champlain Maritime Museum in Vermont, who opined that the technology necessary to locate and recover the vessel existed since the time of the vessel's sinking in 1850. Mr. Cohn explained that the Steamboat Atlantic sank in 160 feet of water in 1852 in Lake Erie, and was salvaged by hardhat divers descending to 139 feet and 155 feet in 1852 and 1855, respectively. Mr. Cohn further opined that since the Dunkink Schooner's masts rose to approximately 100 feet of water, the technology to salvage and locate the vessel clearly existed. Despite this technology, no salvage efforts were attempted.

Plaintiff takes issue with Mr. Cohn's opinion and asserts that the Dunkirk Schooner could not have been discovered "without the advent of modern electronic search technology and innovations in diving technology." *See* Plaintiff's Mem. of Law in Support of Summary Judgment, Dkt. No. 49, at 18. However, plaintiff has provided no evidence to support that assertion. Plaintiff's unsupported assertions that such technology was lacking are inadequate to defeat the State's properly-supported motion for summary judgment. *See Randell v. United States*, 64 3d 101, 109 (2d Cir. 1995); *Beyah v. Coughlin*, 789 F.2d 986, 989-90 (2d Cir. 1986).

9

Moreover, even if a salvage operation would have been unsuccessful as plaintiff contends, there is no evidence indicating that any salvage effort was attempted. What matters is not whether the schooner would have been located, but rather whether anyone even tried looking for it. Here, there is no evidence suggesting that any efforts were made to locate or salvage the vessel. The State's evidence showing that technology to locate the shipwreck did exist, coupled with the absence of any effort to look for it, provides strong evidence of an intent to abandon.

The plaintiff correctly notes that the passage of time alone is insufficient to demonstrate abandonment. *See Captain Lawrence*, 177 F.3d at 499. However, the Magistrate Judge relied on more than the passage of time. He relied on the passage of time, the existence of technology to locate the vessel, and the absence of any efforts made to do so. All of those factors support an inference of abandonment.

Plaintiff attempts to explain the absence of efforts to locate the vessel by suggesting that the *CALEDONIA/GENERAL WAYNE* was being used to ferry fugitive slaves across the Lake Erie to Canada, and that Reed and Dickson likely feared prosecution for smuggling fugitive slaves. While that does provide an explanation as to why the owners never sought to recover the vessel in the first instance, it also supports the conclusion that they made a conscious decision to abandon the vessel so as to avoid criminal or civil liability for their actions. Thus, this explanation only serves to support the State's position that the Dunkirk Schooner was abandoned.

The only evidence that plaintiff has provided in opposition to the State's claim of abandonment is the Mays Assignment. However, like the Magistrate Judge, this Court finds that the Mays Assignment is insufficient to create a material dispute on the issue

of abandonment. Again, assuming the vessel is the *CALEDONIA/GENERAL WAYNE* as plaintiff asserts, there is no evidence indicating that Reed or Dickson bequeathed their interest in the lost vessel to their descendants. Nor is there any evidence suggesting that those descendants made any effort to locate the vessel in the 150 years since its sinking. In fact, there is no indication in the record that Mays, Potter or any other descendant was even aware of the vessel's existence before being approached by plaintiff for an assignment of title. If the Mays Assignment was sufficient to create a question of fact on the issue of intent to abandon, Congressional intent to vest title to shipwrecks "which have been deserted and to which the owner has relinquished ownership rights with no retention" in the States where those wrecks are embedded easily would be circumvented. *See Abandoned Shipwreck Act*, Pub. L. No. 100-298 § 2(b), Apr. 28, 1988, 102 Stat. 433; *see also Trueman*, 120 F.Supp. 2d at 234 ("[T]he policy underlying the ASA recognizes that divers, archeologists, and salvors place conflicting demands on abandoned shipwrecks that is best avoided by vesting title and management authority on such wrecks with the States.").

In sum, the passage of over 150 years since the sinking of the vessel along with the absence of any effort to locate or salvage the vessel by the owners or their decedents despite the existence of technology to do so demonstrates an intent to abandon by clear and convincing evidence. Having determined that the abandonment element of the State's ASA claim is met, summary judgment under the ASA is granted in favor of the State.

**CONCLUSION**

For the reasons stated, the Court adopts Magistrate Judge Foschio's Report and Recommendation to the extent set forth herein and finds that the State has proven its claim under the ASA.[4]  Therefore, summary judgment in favor of State is granted and plaintiff's motion for summary judgment and a salvage award is denied.

The Clerk of the Court is directed to enter judgment in favor of the State and to take all steps necessary to close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 25, 2011

---

[4]  In light of this determination, the Court finds it unnecessary to adjudicate whether the State alternatively holds title to the vessel under various state law provisions, and if so, whether plaintiff is entitled to a salvage award.  The Magistrate Judge recommended denial of a salvage award based upon his conclusion that plaintiff had "plundered" and "despoiled" the vessel.  Plaintiff vehemently denies those findings and asserts entitlement to a liberal salvage award.  This Court need not resolve that factual dispute.  Even if plaintiff did not commit the "plundering" and "despoiling" acts that the Magistrate Judge found to have occurred, plaintiff is still ineligible for a salvage award.  The law of salvage and the law of finds do not apply to abandoned shipwrecks falling within the scope of the ASA. *See* ASA, 43 U.S.C. at § 2106(a). This Court's determination that the ASA applies renders plaintiff's request for a salvage award moot.